## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| JESSICA FISHER, | ) | |
| | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 06-0724-CG-C |
| | ) | |
| HAROLD DODGE, individually and in his | ) | |
| official capacity; JAMAL HENDERSON, | ) | |
| MOBILE COUNTY PUBLIC SCHOOL | ) | |
| DISTRICT, | ) | |
| | ) | |
|     Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

This cause is before the court on the motion of defendants, Mobile County Public School and Harold Dodge, for summary judgment (Docs. 51-53), plaintiff's response thereto (Docs. 56-57), and defendants' reply (Doc. 58). The court finds that Mobile County Public School and Harold Dodge are entitled to state sovereign immunity and state agent immunity and that plaintiff has failed to demonstrate a constitutional violation under 42 U.S.C. § 1983. Therefore, defendants' motion is due to be **GRANTED**.

## FACTS

The basic facts of this case are not in dispute. Plaintiff alleges that on October 4, 2004, she was sexually assaulted by two boys. In October 2004, plaintiff, Jessica Fisher, a seventeen year old female, was a student within the Mobile County School System. (Complaint ¶ 14, Fisher Depo. p. 16-17). Plaintiff had been placed by the Strickland Youth Center into the Pointe Academy Alternative School. (Complaint ¶ 15, Fisher Depo. pp. 19-20). Plaintiff was required to travel to LeFlore Preparatory Academy to take examinations which were required by Alabama

1

Law in order for her to graduate. (Fisher Depo. pp. 26-33).  During the week of examinations, she was picked up by a Mobile County Public School bus and transported to Pointe Academy. (Id.)  From there, she and other students were transported by the Mobile County School bus to LeFlore Preparatory Academy to take their examinations. (Id.)  The students taking the examinations were instructed that once their examinations were complete they were through with school that day and would have to find a ride home. (Id. at p. 30).  On the two days prior to the incident in question, plaintiff had been picked up from LeFlore Academy by her mother. (Id. at p. 33).  On the day in question, plaintiff was waiting for her mother in the school parking lot when she was approached by two boys whom she did not know. (Id. at pp. 30-33).  Plaintiff walked with the two boys to the nearby Michael Figures Park, a public park owned by the City of Mobile. (Id. at pp. 34-35).  Plaintiff alleges the boys sexually assaulted her in the park. (Id. at pp. 37-38).

## LEGAL ANALYSIS

### A. Summary Judgment Standard

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be granted: "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."   The trial court's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).   "The mere existence of some evidence to support the non-moving party is not sufficient for denial of summary judgment; there must be 'sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'" Bailey v. Allgas, Inc., 284 F.3d 1237, 1243 (11th Cir. 2002)

(quoting <u>Anderson</u>, 477 U.S. at 249). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." <u>Anderson</u>, at 249-250. (internal citations omitted).

The basic issue before the Court on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." <u>See</u> <u>Anderson</u>, 477 U.S. at 251-252. The moving party bears the burden of proving that no genuine issue of material fact exists. <u>O'Ferrell v. United States</u>, 253 F.3d 1257, 1265 (11th Cir. 2001). In evaluating the argument of the moving party, the court must view all evidence in the light most favorable to the non-moving party, and resolve all reasonable doubts about the facts in its favor. <u>Burton v. City of Belle Glade</u>, 178 F.3d 1175, 1187 (11th Cir.1999). "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." <u>Miranda v. B&B Cash Grocery Store, Inc.</u>, 975 F.2d 1518, 1534 (11th Cir. 1992) (citing <u>Mercantile Bank & Trust v. Fidelity & Deposit Co.</u>, 750 F.2d 838, 841 (11th Cir. 1985)).

Once the movant satisfies his initial burden under Rule 56(c), the non-moving party "must make a sufficient showing to establish the existence of each essential element to that party's case, and on which that party will bear the burden of proof at trial." <u>Howard v. BP Oil Company</u>, 32 F.3d 520, 524 (11th Cir.1994)(citing <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 324 (1986)). Otherwise stated, the non-movant must "demonstrate that there is indeed a material issue of fact that precludes summary judgment." <u>See</u> <u>Clark v. Coats & Clark, Inc.</u>, 929 F.2d 604, 608 (11th Cir. 1991). The non-moving party "may not rest on the mere allegations or denials of the [non-moving] party's pleading, but .... must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e) "A mere 'scintilla' of evidence supporting the [non-moving] party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." <u>Walker v. Darby</u>, 911 F.2d 1573, 1577 (11th Cir. 1990) (citation omitted). "[T]he nonmoving party may avail itself of all facts and justifiable inferences

3

in the record taken as a whole." <u>Tipton v. Bergrohr GMBH-Siegen</u>, 965 F.2d 994, 998 (11th Cir. 1992). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574 at 587 (1986) (internal quotation and citation omitted).

## B. Claims Asserted

Plaintiff's amended complaint asserts the following claims against Mobile County Public School and Harold Dodge, in both his official and individual capacity: 1) a state law claim for negligent infliction of emotional distress (Count III), 2) negligent infliction of emotional distress under 42 U.S.C. § 1983 (Count IV), 3) negligent hiring and negligent retention (Count V); negligent hiring and negligent retention under 42 U.S.C. § 1983 (Count VI), a state law claim for negligent supervision (Count VII), negligent supervision under 42 U.S.C. § 1983 (Count VIII), and a claim for violation of state constitutional rights (Count IX). (Amended Complaint, Doc. 7). Defendants assert that they are entitled to sovereign immunity and state agent immunity and that plaintiff has failed to demonstrate a constitutional violation under 42 U.S.C. § 1983.

### 1. State Sovereign Immunity

The Alabama Constitution provides that "the State of Alabama shall not be made a defendant in any court of law or equity." Ala. Const. art. I, § 14. County boards of education, as local agencies of the State, enjoy this immunity. <u>E.g.</u>, <u>Hutt v. Etowah County Board of Education</u>, 454 So.2d 973, 974 (Ala. 1984). Sovereign immunity under § 14 of the Alabama Constitution "not only protects state agencies and corporations, but officers, agents or employees in their official capacity ..." <u>Ex parte Cranman</u>, 792 So.2d 392, 399 (Ala. 2000); <u>see</u> <u>also</u> <u>Palmer v. Perry County Bd. of Educ.</u>, 496 So.2d 2, 5 (Ala. 1986) (citations omitted); <u>Walton ex rel. R.W. v. Montgomery County Bd. of Educ.</u>, 371 F.Supp.2d 1318, 1324 (M.D. Ala. 2005) (finding defendants were entitled to sovereign immunity as to claims of negligent training and supervision asserted against the Montgomery County School Board and the superintendent in his official capacity). Thus, the School Board and Harold Dodge, in his official capacity as

superintendent, are immune from tort actions by reason of sovereign immunity.

### 2. State Agent Immunity

A state agent is immune from civil liability in his personal capacity when the conduct

made the basis of the claim is based upon the agent's :

> (1) formulating plans, policies, or designs; or
>
> (2) exercising his or her judgment in the administration of a department or agency of government, including, but not limited to, examples such as:
>
>> (a) making administrative adjudications;
>>
>> (b) allocating resources;
>>
>> (c) negotiating contracts;
>>
>> (d) hiring, firing, transferring, assigning, or supervising personnel; or
>
> (3) discharging duties imposed on a department or agency by statute, rule, or regulation, insofar as the statute, rule, or regulation prescribes the manner for performing the duties and the State agent performs the duties in that manner; or
>
> (4) exercising judgment in the enforcement of the criminal laws of the State, including, but not limited to, law-enforcement officers' arresting or attempting to arrest persons; or
>
> (5) exercising judgment in the discharge of duties imposed by statute, rule, or regulation in releasing prisoners, counseling or releasing persons of unsound mind, or educating students.

Ex parte Cranman, 792 So.2d 392, 405 (Ala. 2000). Notwithstanding the above rule, a State

agent shall not be immune from civil liability in his personal capacity:

> (1) when the Constitution or laws of the United States, or the Constitution of this State, or laws, rules, or regulations of this State enacted or promulgated for the purpose of regulating the activities of a governmental agency require otherwise; or
>
> (2) when the State agent acts willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law.

Id.  Plaintiff's state law claims against Harold Dodge, in his individual capacity, assert that

defendant was negligent.  Although the complaint also asserts that defendants were grossly

negligent, plaintiff has not alleged or supported an allegation that the defendant's actions were willful, malicious, fraudulent, in bad faith, beyond his authority or under a mistaken interpretation of law and plaintiff points to no specific rule or regulation which the defendants failed to follow.  See Stanley ex rel. L.B. v. Bullock County BOE, 2007 WL 4105149 (M.D.Ala. Nov. 15, 2007) (finding allegation that defendants' negligent supervision was so egregious as to rise to gross negligence inferring malice was insufficient where there was no allegation that any school employee acted willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law).  The Alabama Supreme Court has repeatedly held that "the supervision of students is an act involving discretion and judgment, and that persons engaged in such supervision are entitled to immunity from negligence suits." Worthington v. Elmore County Bd. of Educ., 160 Fed. Appx. 877, 883 (11th Cir. 2005) (citing Carroll v. Hammett, 744 So.2d at 910, 911 (Ala. 1999) ("It is well established that the supervision of students is a discretionary function."); Kroger v. Davis, 622 So.2d 303, 304 (Ala. 1993) ("In supervising the students during recess, the defendant teachers were performing a discretionary function and are therefore immune from liability."); Coyle v. Harper, 622 So.2d 302, 303 (Ala. 1993) (holding that teacher who was monitoring the halls when student was injured in her classroom was performing a discretionary function and therefore entitled to immunity)).  Thus, the court finds that Harold Dodge is entitled to state agent immunity as to the state law claims asserted against him in his personal capacity.

**3. Section 1983**

Section 1983 provides a remedy against "any person" who, acting under color of state law, deprives another of rights protected by the Constitution. 42 U.S.C. § 1983.  Municipalities and other local government entities are included among those "persons" to whom § 1983 applies. Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).  However, generally, to impose liability on a municipal government under § 1983, "the plaintiff must identify a municipal 'policy' or 'custom' causing the deprivation of federal rights."

6

Sauls v. Pierce County Sch. Dist., 399 F.3d 1279, 1287 (11th Cir. 2005).  The plaintiff must demonstrate that the municipality's "deliberate conduct" was the "moving force" behind the injury alleged.  Bd. of Comm'rs of Bryan County v. Brown, 520 U.S. 397, 404, 117 S.Ct. 1382, 1388, 137 L.Ed.2d 626 (1997).

Plaintiff asserts that defendants' failure to protect plaintiff demonstrated a "deliberate indifference" to plaintiff's safety.  The "failure to train" employees could itself constitute a governmental "policy" or "custom" for which a local government could be liable, if the failure to train evidenced a "deliberate indifference" to the constitutional rights of those with whom government employees came in contact.  Wyke v. Polk County School Bd., 129 F.3d 560, 568 (11th Cir. 1997) (citing City of Canton v. Harris, 489 U.S. 378, 388, 109 S.Ct. 1197, 1204, 103 L.Ed.2d 412 (1989)).  "However, to prevail on a § 1983 claim against a local government entity, a plaintiff must prove both that her harm was caused by a constitutional violation and that the government entity is responsible for that violation."  Id. (citations omitted).  The defendants must have failed to discharge a constitutional duty owed to plaintiff.  See Wyke, 129 F.3d at 568.  The Due Process Clause does not require "the State to protect the life, liberty, and property of its citizens against invasion by private actors. Id.; see also Griffin v. Troy State University, 333 F.Supp. 2d 1275, 1280 (M.D. Ala. 2004).  "Only in certain limited circumstances [does] the Constitution impose[ ] upon the State affirmative duties of care and protection with respect to particular individuals."  Id. (citations and internal quotations omitted).  "Those circumstances are present when the state affirmatively acts to restrain an individual's freedom to act on his own behalf, either "through incarceration, institutionalization, or other similar restraint of personal liberty."  Id. (citations and internal quotations omitted).   Under federal law, School children are not in a custodial relationship with the State, even when the State mandates school attendance. Nix v. Franklin County School Dist., 311 F.3d 1373, 1378 (11th Cir. 2002); see also Walton ex rel. R.W. v. Montgomery County Bd. of Educ.,  371 F.Supp.2d 1318, 1323 (M.D. Ala. 2005) (citing Nix); Wyke,129 F.3d at 569 ("Compulsory school attendance laws alone are not a

'restraint of personal liberty' sufficient to give rise to an affirmative duty of protection."). "By mandating school attendance, the state simply does not restrict a student's liberty in the same sense that it does when it incarcerates prisoners or when it commits mental patients involuntarily." <u>Wyke</u>, 129 F.3d at 569. "Absent that type of restraint, there can be no concomitant duty to provide for the student's 'safety and general well-being.'" <u>Id.</u> (citations omitted). Thus, courts have not imposed due-process liability for a school board's deliberate indifference to the safety and protection of students at school. <u>Walton</u>, 371 F.Supp.2d at 1323.

For instance, in <u>Walton</u>, as in this case, the plaintiff was allegedly injured by another student. <u>Id.</u> at 1323. The plaintiff alleged that the School Board and its employees were deliberately indifferent to a risk of harm by a third party. However, because the plaintiff was not in the custody of the State and did not suffer harm from an intentional act of any State actor, the court found that there was no constitutional violation. <u>Id.</u> at 1324.

Plaintiff argues that school officials do have a duty to provide reasonable care for the safety of students and freedom from foreseeable harm. To support her contention, plaintiff cites <u>Griffin v. Troy</u>, 333 F.Supp.2d 1275 (M.D. Ala 1994). However, the court does not find that <u>Griffin</u> support's plaintiff's contention. In <u>Griffin</u>, the Court stated that despite compulsory attendance laws, school children in public schools do not have a special relationship with the State through the school and thus, do not have a right to protection. <u>Id.</u> at 1283. The plaintiff in <u>Griffin</u> was required to live on campus as a freshman at the defendant university. The <u>Griffin</u> Court found that although the plaintiff was required to live on campus she retained liberty over her life and was not in the custody of the University. <u>Id.</u> The <u>Griffin</u> Court therefore concluded that a university's requirement that all freshman live on campus was insufficient to establish a special relationship which would give rise to a duty to protect a student from the criminal activities of a third party. <u>Id.</u> The <u>Griffin</u> Court did state that there might be a substantive due process violation in a non-custodial situation where the defendant was deliberately indifferent "to an extremely great risk of serious injury to someone in the plaintiff's position." <u>Id.</u> at 1284.

8

"To act with deliberate indifference, a defendant must know of and disregard an extremely great risk to the plaintiff's health or safety." Id.  The Court noted that the Eleventh Circuit has expressed some doubt under the current case law that liability would be proper under such circumstances, but the Griffith Court nevertheless applied the "'low point' standard of deliberate indifference." Id.  The Court found that even under this low standard, the defendants were not liable because the plaintiff had not alleged conduct that rises to the level of arbitrary or conscious shocking in the constitutional sense. Id.

In the instant case, the fact that plaintiff was required to go to LeFlore Preparatory Academy to take her graduation examinations also does not create a special relationship between plaintiff and the defendants.  Plaintiff's liberty was not restrained in the same sense that an incarcerated prisoner or a mental patient who was involuntarily committed.  In fact, at the time of plaintiff's injury, she was free to leave the school grounds and was waiting for a parent to pick her up.  The court finds that plaintiff also has not alleged conduct so arbitrary or conscious shocking that the school system or its officials should be liable for their deliberate indifference. Plaintiff's assertions that defendants were negligent simply do not demonstrate that these defendants knew of and disregarded an extremely great risk to the plaintiff's health or safety. Moreover, this court, like the Griffith Court, doubts the lower standard of deliberate indifference is appropriate in this case under the current case law.  See e.g. Worthington v. Elmore County Bd. of Educ., 160 Fed.Appx. 877, 881, 2005 WL 3528956, **3 (11th Cir. 2005) (" We do not believe that these factors created a special relationship or a duty on the part of the Board to protect J.W. from third parties. Thus, even if the Board acted with deliberate indifference, there was no constitutional violation." - footnote omitted).  Plaintiff has also failed to identify any deliberate conduct by Mobile County Public School, Harold Dodge, or their employees that was the moving force behind her alleged injury.  Therefore, Harold Dodge and Mobile County Public School are entitled to summary judgment as to plaintiff's § 1983 claims.

## CONCLUSION

For the reasons stated above, the motion for summary judgment, filed by defendants Mobile County Public School and Harold Dodge (Doc. 51), is **GRANTED**.

**DONE** and **ORDERED** this 14th day of January, 2008.


     /s/ Callie V. S. Granade
CHIEF UNITED STATES DISTRICT JUDGE